# 13-1388-cr

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

UNITED STATES OF AMERICA,

*Appellee,*

—against—

PAUL M. DAUGERDAS, ERWIN MAYER, DONNA GUERIN, DENIS FIELD,
ROBERT GREISMAN, RAYMOND CRAIG BRUBAKER, BDO USA, LLP,

*Defendants,*

DAVID PARSE,

*Defendant-Appellant.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**BRIEF FOR *AMICUS CURIAE***
**NEW YORK COUNCIL OF DEFENSE LAWYERS**
**IN SUPPORT OF DEFENDANT-APPELLANT**

---

LAWRENCE J. ZWEIFACH
JANE KIM
GIBSON, DUNN & CRUTCHER LLP
200 PARK AVENUE
NEW YORK, NEW YORK 10166
(212) 351-4000

CRAIG A. STEWART
ALEXANDRA L. MITTER
ARNOLD & PORTER LLP
399 PARK AVENUE
NEW YORK, NEW YORK 10022
(212) 715-1000

*Attorneys for Amicus Curiae*
*New York Council of Defense Lawyers*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................... ii

STATEMENT OF INTEREST ..................................................................1

SUMMARY OF ARGUMENT ..................................................................3

ARGUMENT ...............................................................................................6

    I.    Trial Counsel Must Bring Concerns Regarding A Juror's
        Statements To A District Court's Attention Only When
        Counsel Knows That A Juror Has Engaged In Misconduct. ...............6

        A.    Trial Counsel Are Entitled To Rely On Prospective
               Jurors' Sworn Statements. ..........................................................6

        B.    The District Court Erroneously Found That Parse's
               Counsel Were Not Entitled To Rely On Prospective
               Jurors' Sworn Statements. ..........................................................8

        C.    The District Court's Decision Improperly Creates A
               Waiver Standard At Odds With The Applicable Rules Of
               Professional Conduct. ...............................................................12

    II.    The District Court's Decision Will Result In Intrusive Inquiries
        Of Jurors And In Unnecessary Collateral Litigation. ........................17

CONCLUSION .........................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brewer v. Williams,*
430 U.S. 387 (1977)....................................................................................15

*Doe v. Fed. Grievance Comm.,*
847 F.2d 57 ...................................................................................13, 21

*Estelle v. Williams,*
425 U.S. 501 (1976)....................................................................................14

*Gomez v. United States,*
490 U.S. 858 (1989).....................................................................................6

*Grievance Comm. for S. Dist. of New York v. Simels,*
48 F.3d 640 (2d Cir. 1995) ......................................................................16

*Ham v. South Carolina,*
409 U.S. 524 (1973)....................................................................................18

*Rita v. United States,*
551 U.S. 338 (2007)......................................................................................2

*Rosales-Lopez v. United States,*
451 U.S. 182 (1981)......................................................................................6

*Sinclair v. United States,*
279 U.S. 749 (1929)...............................................................................18, 20

*United States v. Awadallah,*
436 F.3d 125 (2d Cir. 2006) .....................................................................2

*United States v. Blagojevich,*
614 F.3d 287 (7th Cir. 2010) ...................................................................18

*United States v. Booker,*
543 U.S. 220 (2005)......................................................................................2

*United States v. Collins*,
  665 F.3d 454 (2d Cir. 2012) ................................................................1

*United States v. Daugerdas*,
  867 F. Supp. 2d 445 (S.D.N.Y. 2012) ..........................................*passim*

*United States v. Fazio*,
  No. 12-3786 (2d Cir. Feb. 4, 2013) ....................................................1

*United States v. Lawes*,
  292 F.3d 123 (2d Cir. 2002) ...............................................................8

*United States v. Martinez-Salazar*,
  528 U.S. 304 (2000)...................................................................8, 16

*United States v. Sorich*,
  No. 05-CR-644, ECF No. 139 (N.D. Ill. Apr. 26, 2006)...................19

*United States v. Stein*,
  541 F.3d 130 (2d Cir. 2008) ...............................................................1

*United States v. Watts*,
  No. 10-CR-627 (KAM), 2013 WL 1192781 (E.D.N.Y. Mar. 22, 2013) ...........19

## STATUTES, RULES AND REGULATIONS

Fed. R. App. P. 29(a) .......................................................................1

Fed. R. App. P. 29(c)(5)....................................................................1

2d Cir. R. 29.1(b) ............................................................................1

22 N.Y. Comp. Codes R. & Regs. § 603 ......................................16

22 N.Y. Comp. Codes R. & Regs. § 605 ......................................16

N.Y. Rule Prof. Conduct 1.0(k) ...................................................13

N.Y. Rule Prof. Conduct 3.3(b) ............................................12, 13

N.Y. Rule Prof. Conduct 3.5(a)(4)...............................................19

N.Y. Rule Prof. Conduct 3.5(a)(6)...............................................19

N.Y. Rule Prof. Conduct 3.5(c) ................................................................19

N.Y. Rule Prof. Conduct 3.5(d) ...............................................................13

Comments to the New York Rules of Professional Conduct, Rule 3.3(b)
    (May 4, 2010)........................................................................................13

American Bar Association Model Rules of Professional Responsibility,
    Rule 3.3(b) ..........................................................................................13

## OTHER AUTHORITIES

Anita Ramasatry, *Googling Potential Jurors: The Legal and Ethical Issues
    Arising from the Use of the Internet in Voir Dire,* FINDLAW (May 30,
    2010) .........................................................................................7, 8, 14

Caren Myers Morrison, *Can the Jury Trial Survive Google?*, 25 CRIM. JUST.
    4 (Winter 2011).....................................................................................18

Chip Babcock & Luke Gilman, *Use of Social Media in Voir Dire*, 60 THE
    ADVOCATE (TEXAS) 44 (Fall 2012) ...............................................7, 14

Drew Singer, *Juror Misconduct Strikes Again At Jenkens Atty's Trial*
    (Oct. 24, 2013). ....................................................................................17

Eric P. Robinson, *Virtual Voir Dire: The Law and Ethics of Investigating
    Jurors Online*, 36 AM. J. TRIAL ADVOC. 597 (2013) ....................14, 16

Jonathan M. Redgrave, *The Information Age*, *Part II: Juror Investigation on
    the Internet — Implications for the Trial Lawyer*, 2 SEDONA CONF. J. 211
    (Fall 2001)............................................................................................18

Melanie D. Wilson, *Juror Privacy in the Sixth Amendment Balance*, 2012
    UTAH L. REV. 2023 (2012)...................................................................18

New York City Bar Association, Committee on Professional Ethics, *Jury
    Research and Social Media*, Formal Opinion 2012-02 ......................19

Richard Vanderford, *LinkedIn Search Nearly Upends BofA Mortgage Fraud
    Trial* (Sept. 27, 2013)..........................................................................20

Sylvia Hsieh, *On Murder and Social Media: Casey Anthony's Jury
    Consultant Speaks*, LAWYERSUSA (Jul. 5, 2011) ...............................7

## <u>STATEMENT OF INTEREST</u>

The New York Council of Defense Lawyers ("NYCDL") is a not-for-profit professional association of approximately 240 lawyers (including many former federal prosecutors) whose principal area of practice is the defense of criminal cases in the New York federal courts.[1] NYCDL's mission includes protecting individual rights guaranteed by the Constitution, enhancing the quality of defense representation, and promoting the proper administration of criminal justice. NYCDL offers the Court the perspective of experienced practitioners who regularly handle some of the most complex and significant criminal cases in the federal courts. NYCDL has submitted *amicus* briefs in Second Circuit cases involving important criminal defense issues, including the right of the accused to the assistance of counsel, *see United States v. Stein*, 541 F.3d 130 (2d Cir. 2008), and the right of a criminal defendant, represented by counsel, to be heard on issues of juror conduct, *see United States v. Collins*, 665 F.3d 454 (2d Cir. 2012); Br. for *Amicus Curiae* NYCDL, *United States v. Fazio*, No. 12-3786 (2d Cir. Feb. 4, 2013). NYCDL's *amicus* briefs have been cited by the Supreme Court in cases

---

[1] Pursuant to Fed. R. App. P. 29(c)(5) and 2d Cir. R. 29.1(b), NYCDL states that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and other than NYCDL and its members, no person contributed money that was intended to fund preparing or submitting this brief. Pursuant to Fed. R. App. P. 29(a), NYCDL states that all parties have consented to the filing of this brief.

including *Rita v. United States*, 551 U.S. 338, 373 n.3 (2007) (Scalia, J., concurring), and *United States v. Booker*, 543 U.S. 220, 266 (2005), and by this Court in *United States v. Awadallah*, 436 F.3d 125, 135 & n.9 (2d Cir. 2006).

NYCDL has an interest in ensuring that defense counsel be permitted to represent their clients effectively throughout the entire course of trial. NYCDL submits that the district court's decision in *United States v. Daugerdas*, 867 F. Supp. 2d 445 (S.D.N.Y. 2012), is erroneous in several respects. NYCDL concurs in the argument advanced by defendant-appellant David Parse that "in the rare circumstance where a juror's bias has been conclusively established, the right to impartiality should not be waivable." Parse App. Br. at 2. NYCDL likewise agrees with Parse that even "if a defendant could consent to a fundamentally unfair trial, settled waiver principles would require the defendant himself to provide a knowing and intelligent waiver." Parse App. Br. at 2. NYCDL is not, however, making this submission to address those arguments. Rather, we are submitting this *amicus* brief because we believe that the district court's decision imposes an improper, confusing, and heretofore unheard-of standard on counsel concerning the circumstances under which counsel are obligated to raise instances of possible juror misconduct.[2] Like Parse, NYCDL believes that, "even if attorneys could

---

[2]  NYCDL notes that one of the members of Parse's trial team is a member of NYCDL.

unilaterally waive their clients' right to an impartial jury, that did not occur here."
Parse App. Br. at 2. In addition, NYCDL believes that the district court's decision
will result in significant and negative collateral consequences for courts, trial
counsel, and jurors.

## SUMMARY OF ARGUMENT

Courts have long recognized that jury selection is a critical phase of trial. In
assessing which jurors to select, how to construct opening statements and closing
arguments, and how to present or challenge evidence, counsel must rely heavily on
the information that jurors provide during voir dire. The development of the
internet has given counsel a new mechanism with which to conduct research about
jurors. At times, such research may raise questions about the accuracy and
completeness of information that jurors have provided during voir dire.

As Parse's brief demonstrates, the district court's decision here requires
disclosure of concerns about juror misconduct in circumstances where counsel do
not have actual knowledge that such misconduct occurred, and thus it is at odds
with settled law governing waiver of a client's constitutional rights. Independently
of that error, however, the district court's rule also is inconsistent with the rules of
professional conduct governing trial practice. The applicable rules of professional
conduct make clear that counsel need not bring concerns about possible juror
misconduct—including concerns about possible misstatements made during voir

3

dire—to the attention of the trial court unless counsel *actually know* that such misconduct has occurred.

The district court established in post-trial proceedings that one of the jurors, Juror No. 1, named Catherine Conrad, had engaged in lies "breathtaking" in scope during voir dire in an effort to be seated on the jury. *Daugerdas*, 867 F. Supp. 2d at 468. As the district court found, Ms. Conrad was "a pathological liar" who "ha[d] no business sitting on a jury in judgment of others." *Id.* at 471. The district court therefore granted new trials to all convicted defendants, save defendant-appellant Parse. *Id.* at 476. The court concluded that Parse's counsel waived Parse's right to a new trial by failing to inform the district court of the possibility, suggested by internet research conducted during trial, that Ms. Conrad had lied during voir dire. In fact, the record reflects that, in the course of trial, Parse's counsel became aware only that a person with the same common name as Juror No. 1—who had claimed to have had no education beyond a bachelor's degree and to be "a stay at home wife," and who gave other information that was completely inconsistent with the identifying information of the suspended attorney—was nevertheless a suspended attorney. After raising the fact with other defense counsel that Juror No. 1 had the same name as a suspended attorney, Parse's counsel rejected the possibility that they were the same person, relying on Juror No. 1's sworn statements and the implausibility that a lawyer would perjure herself

4

so that she could spend three months on a jury hearing a tax shelter prosecution. While the district court at times seemed to characterize Parse's counsel's consideration of that possibility as knowledge, in reality, the district court substituted a standard of supposition for the actual knowledge of misconduct sufficient to warrant a waiver of constitutional rights or that would require trial counsel to report misconduct. The district court alternatively imposed a requirement of due diligence upon counsel's initiation of any research outside of voir dire.

The district court should not have imposed a waiver standard at odds with the rules of professional conduct, particularly where, as here, the district court did not apply the applicable rule and was critical of counsel who acted in compliance with the rules. The decision is especially problematic given the uncharted territory presented to courts and counsel by the growing use of the internet. The district court's decision to create a new standard—and simultaneously to penalize Parse and his counsel for failing to adhere to it—will sow confusion among trial counsel about how to handle discrepancies between information provided during voir dire and information generated by searches of internet or social media sites that are often confusing and in error. The district court's decision also will lead counsel to engage in overly intrusive searches of jurors' personal information and will encourage collateral litigation during the course of trial about whether jurors have

been truthful. Thus, even aside from being contrary to the rules of professional

conduct governing disclosure of juror misconduct, the district court's ruling has the

potential to have a negative effect on the ability of courts and trial counsel to

manage jury selection and to conduct trials effectively and efficiently.

## **ARGUMENT**

I.    **Trial Counsel Must Bring Concerns Regarding A Juror's Statements
      To A District Court's Attention Only When Counsel Knows That A
      Juror Has Engaged In Misconduct.**

The district court's decision upends the rule of professional conduct that

counsel must bring concerns about juror misconduct to the attention of the court

only when counsel actually know that a juror has engaged in such misconduct.

The court's disregard of the standard for disclosure of juror misconduct is

unfounded and will generate confusion among trial counsel.

   A.    **Trial Counsel Are Entitled To Rely On Prospective Jurors'
         Sworn Statements.**

It is well settled that jury selection, including voir dire, is a critical phase of

trial. *See, e.g.*, *Gomez v. United States*, 490 U.S. 858, 872-73 (1989); *Rosales-

Lopez v. United States*, 451 U.S. 182, 188 (1981). Counsel rely on the information

provided during voir dire not only to select jurors, but also to frame their trial

strategy, inform their examination of witnesses, and fashion their arguments.

Accordingly, counsel rely on the veracity of members of the venire, who have

taken an oath to answer truthfully the questions posed to them by the court or by

6

counsel. Such reliance was eminently reasonable in this case, in which the district court repeatedly emphasized the fundamental importance of the prospective jurors' oath, both to the venire[3] and to counsel.[4]

In addition to information disclosed during voir dire, counsel now have access to a wealth of supplemental information about jurors because of the explosion in internet-based research and the use of social media. *See* Chip Babcock & Luke Gilman, *Use of Social Media in Voir Dire*, 60 THE ADVOCATE (TEXAS) 44 (Fall 2012); Anita Ramasatry, *Googling Potential Jurors: The Legal and Ethical Issues Arising from the Use of the Internet in Voir Dire*, FINDLAW (May 30, 2010), http://writ.news.findlaw.com/ramasastry/20100730.html; *cf.* Sylvia Hsieh, *On Murder and Social Media: Casey Anthony's Jury Consultant Speaks*, LAWYERSUSA (Jul. 5, 2011), http://lawyersusaonline.com/blog/2011/07/05/on-murder-and-social-media-casey-

---

[3] "Now, the jury selection process is called voir dire. Voir dire is an old French term which means to speak the truth, and that is precisely what each of you is now sworn to do in answering my questions. The jury selection process is intended to make sure that we have a jury of citizens who will decide the issues in this case fairly and impartially and without any bias or prejudice in favor of either side or against either side. In order to do that, I am going to be asking you certain questions about your personal background, your families, some of your beliefs and attitudes about certain matters, how you are employed and so forth. You should understand that my questioning is not intended to pry into your lives but simply to make sure that we select fair and impartial jurors; that is, jurors who will be free from preconceived notions or prejudices that might prevent them from returning a fair and just verdict based solely on the evidence or the lack of evidence." (A-225; s*ee also* A-240; A-294).

[4] "[W]hen somebody declares under penalties of perjury that they rely on commissions for their income, I wouldn't ask another question beyond that." (A-208).

anthony%E2%80%99s-jury-consultant-speaks/.  In the course of their research about jurors, counsel may come across information that differs from that provided by jurors during voir dire.  However, a significant amount of the information posted online is inaccurate, suggesting that counsel must use caution in evaluating it.  *See* Ramasatry, *supra.*  Accordingly, trial counsel and courts are entitled to rely on the statements made by jurors during voir dire.  (*See* A-176 ("I think that all counsel are best served by having the Court put questions to prospective jurors in open court where their demeanor and their response can be observed as opposed to just reading a questionnaire.")).  *See also United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000) (trial counsel's decisions are "fast paced, made on the spot and under pressure"); *United States v. Lawes*, 292 F.3d 123, 128 (2d Cir. 2002).

**B.  The District Court Erroneously Found That Parse's Counsel Were Not Entitled To Rely On Prospective Jurors' Sworn Statements.**

In this case, despite the district court's admonition about the sanctity of the oath taken by jurors, Juror No. 1, Catherine Conrad, lied extensively, both in her answers on a questionnaire circulated to the venire prior to voir dire and during voir dire questioning by the court.  Indeed, in order to improve her odds of being selected as a juror, Ms. Conrad fabricated everything, including her home address, educational background, employment, criminal history, and even the status of a personal injury suit she had filed.  *Daugerdas*, 867 F. Supp. 2d at 452-54.  (*See*

8

*also* A-5648-49; A-5661). As the district court found, and as Ms. Conrad admitted, she invented a "totally fictitious persona" in order to make herself more "marketable" to defense counsel so that she could be seated as a juror. *Daugerdas*, 867 F. Supp. 2d at 456, 473. Neither the court nor trial counsel, however, knew that Ms. Conrad had lied.

Like the other counsel and the court, Parse's counsel found Ms. Conrad's statements during voir dire to be credible. Parse's counsel was aware from an internet search that Ms. Conrad had the same name as a lawyer whose license had been suspended. However, because of the stark discrepancies between that individual's identifying information and the information provided by Juror No.1, Parse's counsel concluded that they were different people who shared a relatively common name. Indeed, the internet search identified several "Catherine Conrad[s]" in New York alone. (A-5416). Had Parse's counsel thought otherwise—*i.e.*, that Juror No. 1 was a suspended lawyer—then counsel would not have wanted her on the jury. (A-5719).

At some point during closing arguments, Ms. Conrad authored a note that "asked whether the Court would instruct the jury on the legal doctrine of *respondeat superior* and posed a question about vicarious liability." *Daugerdas*, 867 F. Supp. 2d at 460. As the district court explained, "[n]o party had raised either term during trial, and neither term was germane to the questions at issue."

9

*Id.* Ms. Conrad's note prompted a member of Parse's defense team to conduct a further internet search on Catherine Conrad. The results of that search were ambiguous and confusing. (A-5535-54 (showing multiple addresses for Catherine Conrad and listing two Social Security numbers)). Although the same lawyer commented in an email that Juror No. 1 might in fact be the suspended lawyer ("Jesus, I do think that it's her")—a comment given great weight by the district court, *see Daugerdas*, 867 F. Supp. at 464-67, 480-82—Parse's trial team concluded that it was "inconceivable" that Juror No. 1 would have lied about her address, educational status, and employment background so that she could be picked as a juror for a three-month tax shelter prosecution. (*See* A-5624; A-5627; A-5737-39; A-5783). Following the disclosure of Ms. Conrad's note, Parse's counsel raised with two experienced trial counsel for another defendant the fact that there was a Catherine Conrad whose law license had been suspended. All counsel were of the view that Juror No. 1 was a different person than the Catherine Conrad whose law license had been suspended. (*See* A-5818; A-5826; A-5832).

Ms. Conrad's deception did not begin to unravel until post-verdict, after she sent a letter to one of the prosecutors in charge of the prosecution. The letter triggered post-trial proceedings, including a hearing at which Ms. Conrad herself testified. Following those proceedings, the district court found that Ms. Conrad was "a pathological liar" who made a "calculated, criminal decision to get on the

10

jury," and, therefore, "ha[d] no business sitting on a jury in judgment of others."
*Daugerdas,* 867 F. Supp. 2d at 457, 476.

In granting new trials to the defendants who had been convicted, the district
court acknowledged that Ms. Conrad's statements during voir dire presented an
extreme example of juror dishonesty that both demonstrated her partisanship and
compromised the defendants' right to a fair and impartial jury. *See id.* at 468, 471.
The district court refused to grant Parse a new trial only because the district court
felt that Parse's counsel either had accumulated enough information from
counsel's internet searches over the course of the trial to establish that Juror No. 1
had lied about her identity or should have been more diligent in their research. The
district court cited counsel's discovery of a 2010 Appellate Division Suspension
Order for a Catherine Conrad, the confusing internet search results, and the email
by one of Parse's counsel expressing the thought that Juror No. 1 might be the
suspended lawyer. *Id.* at 480. The district court found that counsel's failure to
bring their questions to the district court's attention "permitted Conrad's egregious
conduct to infect the largest tax fraud prosecution in U.S. history." *Id.* at 467.

By requiring trial counsel to come forward with any information, however
unsubstantiated, that is inconsistent with a prospective juror's answers during voir
dire, the district court's ruling represents a hasty response to a rare and exceptional

11

case of juror fraud, and challenges the longstanding reliance by counsel on the sworn statements of prospective jurors during voir dire.

### C. The District Court's Decision Improperly Creates A Waiver Standard At Odds With The Applicable Rules Of Professional Conduct.

In reaching its conclusion, the district court effectively—and erroneously—formulated a new standard for waiver of the Sixth Amendment right to a fair and impartial jury. This standard requires disclosure of possible juror misconduct at a substantially lower threshold than that provided for in the applicable rules of professional conduct. Consequently, this Court should overrule the district court's decision.

The standard created by the district court is at odds with the applicable rules of professional conduct addressing the obligation to report possible juror misconduct. The New York Rules of Professional Conduct and the American Bar Association Model Rules of Professional Conduct make clear that a lawyer must make such disclosure only when counsel *knows* that a juror has lied about material matters during voir dire. (*See* A-5845). Under Rule 3.3(b) of the New York Rules of Professional Conduct, "[a] lawyer who represents a client before a tribunal and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." New York Rules of

12

Professional Conduct, Rule 3.3(b) (effective April 1, 2009, amended May 4, 2010); *see also* Comments to the New York Rules of Professional Conduct, Rule 3.3(b) (May 4, 2010) ("Lawyers have a special obligation as officers of the court to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process."); New York Rules of Professional Conduct, Rule 3.5(d) ("A lawyer shall reveal promptly to the court improper conduct by a member of the venire . . . of which the lawyer has knowledge."); American Bar Association Model Rules of Professional Conduct, Rule 3.3(b) ("A lawyer . . . who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal."). "Each of these rules requires knowledge on the part of the lawyer, and that knowledge must be 'actual' knowledge." (A-5845-46 (citing, *inter alia*, New York Rule 1.0(k) and *Doe v. Fed. Grievance Comm.*, 847 F.2d 57, 63 (2d Cir. 1988) (holding that even a strong suspicion is not equivalent to actual knowledge))).

As Professor Gillers concluded after evaluating the conduct at issue here, Parse's counsel lacked the knowledge concerning Juror No. 1's true identity necessary to trigger an obligation to make any disclosure to the district court.[5] (A-5848-49). The most that can be said, even with the benefit of hindsight, is that

---

[5] The district court's decision does not reference Professor Gillers' declaration.

Parse's counsel at one brief point thought that Juror No. 1 and the lawyer with the suspended license could be the same person. *Cf. Estelle v. Williams*, 425 U.S. 501, 512 (1976) (noting "vast array of trial decisions" that must be made during trial). Parse's counsel had insufficient bases for knowing that Juror No. 1 was indeed Catherine Conrad the suspended lawyer. Catherine Conrad is a common name. That, plus Juror No. 1's sworn statements, her seeming diligence as a juror, and the bizarre notion that anyone, let alone a lawyer, would perjure herself to sit on a jury for three months all supported the presumption that Juror No. 1 was not a suspended lawyer. Furthermore, the fact that the note prepared by Juror No. 1 used legal terminology totally irrelevant to the case—but relevant to her civil tort claim—suggested that Juror No. 1 was not a lawyer. (A-5737-38; A-5739). The internet report prepared on Catherine Conrad was confusing and plainly inadequate to support actual knowledge that Juror No. 1 had engaged in misconduct. *See* Eric P. Robinson, *Virtual Voir Dire: The Law and Ethics of Investigating Jurors Online*, 36 AM. J. TRIAL ADVOC. 597, 629 (2013) (observing that there "may be multiple people online with the same or similar names, or information posted about a juror could be inaccurate, either through negligence or malice"); Babcock & Gilman, *supra* (raising concerns about accuracy of information on internet); Anita Ramasatry, *supra* (same). The record, then, does not support a determination that

14

Parse's counsel had actual knowledge that Juror No. 1 had lied during voir dire within the meaning of the governing rules of professional conduct.[6]

As an alternative, the district court opined that it "would still find waiver appropriate because the facts overwhelmingly paint a picture of a glaring lack of reasonable diligence by Parse's attorneys." *Daugerdas*, 867 F. Supp. 2d at 482. In addition to being contrary to the relevant rules of professional conduct, the district court's application of a "reasonable diligence" standard reflects the inherent danger of such a test: that courts, viewing juror misconduct in hindsight, will set the bar unreasonably high, and in effect require parties to investigate or disclose what was, at the time, a mere possibility or suspicion of misconduct. While the district court thought that the suspension order and internet search sufficed to put Parse's counsel on notice because, in the court's view, those documents cast "strong doubt" on Juror No. 1's sworn statements during voir dire, in fact, and as noted above, the documents are far more equivocal than the district court portrays them. *Id.* at 484; *see also Brewer v. Williams*, 430 U.S. 387, 404 (1977) (ambiguous evidence must be resolved against waiver). The district court's conclusion that

---

[6]  Notably, following the verdict, Parse's counsel made no effort to make any motion regarding Juror No. 1 until the United States Attorney's Office provided her letter to defense counsel, some three weeks after the verdict and after post-trial motions had been submitted. This lack of any attempt to impeach Juror No. 1 until she, herself, showed her true colors, demonstrates with clarity that Parse's counsel had concluded, albeit erroneously, that Juror No. 1 was not the suspended attorney she turned out to be. The district court's decision does not address this fact.

Parse's counsel should have inquired further on the record as it was known at the time, on pain of waiver, puts too high a burden on trial counsel. *See Martinez-Salazar*, 528 U.S. at 316 ("the reality of the jury selection process" is such that "[c]hallenges for cause and rulings upon them . . . are fast paced, made on the spot and under pressure. Counsel as well as courts, in that setting must be prepared to decide, often between shades of gray, 'by the minute.'"). Indeed, "no authority has positively held that attorneys have an affirmative responsibility to undertake such research as part of their obligation to their client(s)." Robinson, *supra* at 636.

Inasmuch as established rules and procedures governing attorney reporting of juror fraud already are in place,[7] it was unnecessary and improper for the district court to construct new rules and consequences for the instant case.[8] The district court's decision will sow confusion about the standard counsel are obliged to follow in raising possible juror misconduct.[9] This Court should not permit that to

---

[7]  *See* 22 N.Y. Comp. Codes R. & Regs. §§ 603, 605.

[8]  District courts cannot expansively interpret rules of professional conduct or create new ones without "clear" and "fair notice" to those affected. *Grievance Comm. for S. Dist. of New York v. Simels*, 48 F.3d 640, 644, 650-51 (2d Cir. 1995). If a new rule governing disclosure of suspicions of prospective juror misconduct were to be established, it would require "careful consideration" by the "appropriate policymaking bodies," and "should be made either by Congress or the Supreme Court." *Id.* at 644, 651. To the extent that this Court determines that the district court created a new rule of professional conduct or modified the existing rules governing disclosure of juror misconduct, the district court's decision did not provide Parse's counsel with adequate notice.

[9]  Curiously, at the retrial of this case of the defendants granted new trials, questionable juror conduct occurred again, resulting this time from a juror's use of the internet to conduct research on "one of the witnesses and the judge

Footnote continued on next page

16

occur and should instead confirm the requirement that counsel look for guidance to well-settled rules and procedures.

## II.    The District Court's Decision Will Result In Intrusive Inquiries Of Jurors And In Unnecessary Collateral Litigation.

The district court's decision to set a lower threshold for disclosure of possible juror misconduct will result in troubling collateral consequences.  Faced with this decision, counsel in other cases will feel the need to conduct additional, potentially intrusive, juror research and to report even remote concerns to trial courts.  In a related vein, counsel may feel obliged to initiate collateral litigation during trial to address suspicions about whether jurors have engaged in misconduct (or are otherwise unqualified to sit as jurors).  Conversely, the rule may have a chilling effect, compelling some counsel to avoid all outside research into prospective jurors on pain of waiver or for fear of professional sanctions.  None of these outcomes is desirable.

The decision to initiate an independent inquiry into prospective jurors is fraught with ethical issues for trial counsel to navigate.  While the jurisprudence is sparse on an attorney's ethical boundaries when it comes to researching potential

---

Footnote continued from previous page

himself."  *See* Drew Singer, *Juror Misconduct Strikes Again At Jenkens Atty's Trial*, Law360 (Oct. 24, 2013), http://www.law360.com/whitecollar/articles/483305?nl_pk=197136cb-045f-4e2d-aba6-2a40dfe2c517&utm_source=newsletter&utm_medium=email&utm_campaign=whitecollar.

jurors, courts have expressed concerns about the possible effects of overzealous investigation. *See Sinclair v. United States*, 279 U.S. 749, 765 (1929) ("[I]f those fit for juries understand that they may be freely subjected to treatment like that here disclosed [surveillance of family members], they will either shun the burdens of the service or perform it with disquiet and disgust."); *Ham v. South Carolina*, 409 U.S. 524, 533 (1973) (Marshall, J., concurring in part and dissenting in part) (weighing the "defendant's interest in a jury free of prejudice" against "the avoidance of jury intimidation"); *United States v. Blagojevich*, 614 F.3d 287, 293 (7th Cir. 2010) (Posner, J., dissenting) (regarding anonymous juries, "[m]ost people dread jury duty—partly because of privacy concerns."). Numerous scholarly articles have been published on the ethical quandaries that may arise for trial counsel when researching potential jurors. *See, e.g.*, Melanie D. Wilson, *Juror Privacy in the Sixth Amendment Balance*, 2012 UTAH L. REV. 2023 (2012); Caren Myers Morrison, *Can the Jury Trial Survive Google?*, 25 CRIM. JUST. 4, 15 (Winter 2011); Jonathan M. Redgrave, *The Information Age, Part II: Juror Investigation on the Internet — Implications for the Trial Lawyer*, 2 SEDONA CONF. J. 211 (Fall 2001). The privacy interests of potential jurors and trial counsel's related ethical obligations must be balanced against the defendant's right to a fair and impartial jury.

Although the New York Rules of Professional Conduct provide some guidance to counsel with respect to researching prospective jurors, the rules do not address the full panoply of potential investigative techniques, including internet research and its implications. Rule 3.5(a)(4) provides that a lawyer may not "communicate or cause another to communicate" with a member of the venire or any prospective juror's family members.[10] However, the contours of "communication" are not entirely clear, and at least one court in this Circuit recently prohibited counsel from engaging in any internet activity that might reveal to the prospective juror that she was being investigated (*e.g.*, LinkedIn). *See United States v. Watts*, No. 10-CR-627 (KAM), 2013 WL 1192781, at *35 (E.D.N.Y. Mar. 22, 2013); *accord* New York City Bar Association, Committee on Professional Ethics, *Jury Research and Social Media*, Formal Opinion 2012-02 (noting that counsel researching potential jurors online must "understand the properties of the service or website she wishes to use for jury research in order to avoid inadvertent communications"); *see also United States v. Sorich*, No. 05-CR-644, ECF No. 139 (N.D. Ill. Apr. 26, 2006) (prohibiting public record searches of prospective jurors). Similarly, Rule 3.5(a)(6) prohibits "vexatious or harassing investigation of . . . a member of the venire," but the Commentaries do not provide

---

[10] Rule 3.5(c) provides that Rule 3.5(a) is applicable to the family members of prospective jurors as well.

any gloss on the point at which an investigation might become "vexatious or harassing." The district court's decision will compound the problems created by internet usage by causing counsel to pursue aggressive investigations into potential and seated jurors without adequate guidance. Such conduct is certain to create difficulties for courts, counsel, and jurors. *See Sinclair*, 279 U.S. at 765; Richard Vanderford, *LinkedIn Search Nearly Upends BofA Mortgage Fraud Trial*, LAW360 (Sept. 27, 2013), http://www.law360.com/articles/476511/linkedin-search-nearly-upends-bofa-mortgage-fraud-trial (juror received LinkedIn alert that defense counsel had viewed his personal page).

The district court's decision also invites counsel to apprise the court of every fact learned about jurors that may differ from those disclosed during voir dire. Its finding of a waiver of the right to an impartial jury based on trial counsel's belief—rather than actual knowledge—that information may relate to a potential or seated juror leaves trial counsel with little choice. As a result, courts will be forced to break from underlying proceedings to hold arguments and even hearings about whether jurors should be dismissed. The upshot will be further invasion of the privacy of jurors, a drain on the scarce resources of the court and of trial counsel, and delay in the underlying proceedings themselves. "Court dockets would quickly become overburdened with conducting these collateral proceedings which would necessarily hold up the ultimate disposition of the underlying action." *Doe*,

847 F.2d at 63 (discussing effects of ethical reporting standard less than "actual knowledge"); *see id.* ("We do not believe that the Code's drafters intended to throw the court system into such a morass."). This Court should not countenance these consequences.

Further, the district court's new rule does not provide any guidance as to what courts or counsel should do once mere suspicions are reported regarding prospective juror misconduct or fraud. The district court does not advise whether, going forward, counsel must further and independently research or substantiate their suspicions, or whether the courts must engage in or manage such investigations. Implementation of the district court's rule will create new issues and questions.

## CONCLUSION

The judgment of conviction should be reversed.

DATED:     New York, New York          Respectfully submitted,
           November 13, 2013

                                       ARNOLD & PORTER LLP


                                       By: /s/Craig A. Stewart
                                           Craig A. Stewart
                                           Alexandra L. Mitter
                                           399 Park Avenue
                                           New York, New York  10022
                                           (212) 715-1000

                                       GIBSON, DUNN & CRUTCHER
                                       LLP


                                       By: /s/ Lawrence J. Zweifach
                                           Lawrence J. Zweifach
                                           Jane Kim
                                           200 Park Avenue
                                           New York, New York  10166
                                           (212) 351-4000

                                       *Attorneys for* Amicus Curiae *New York Council of Defense Lawyers*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FRAP 29(d) and 32(a)(7)(B) because it contains 5220 words (based on the Microsoft Word word-count function) excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point type.

/s/Craig A. Stewart
Craig A. Stewart
*Attorney for* Amicus Curiae *New York Council of Defense Lawyers*

Dated: November 13, 2013